```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF KENTUCKY
```
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Action No. 5:06-CR-155-S-JMH |
| ) | |
| v. ) | |
| ) | |
| DONALD "CHAMP" MAZE, ) | |
| ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. ) | |
| ) | |

                    **      **      **      **      **

Defendant Donald "Champ" Maze has moved the Court to dismiss Counts III, IV, and V of his indictment [Record No. 26]. The United States filed a response [Record No. 29], to which the defendant replied [Record No. 30]. At a January 23, 2007, hearing, the Court orally denied this motion.

## Factual Background

On July 25, 2006, and August 9, 2006, Tammy Manley met with Maze and recorded their conversations. At that time, Manley was already under a July 7, 2006, indictment for her alleged actions during the May 2006 primary election in Bath County, Kentucky, including conspiring to violate 42 U.S.C. § 1973i(c), which makes it unlawful to pay and offer to pay for voting in an election held in part to select a candidate for the office of Member of the United States House of Representatives. Maze's statements during those conversations form the basis of the government's charges set forth in Counts III and IV of his indictment. Specifically, in Count III, the government focuses on three statements made by Maze

to Manley on August 9, 2006, as evidence that he violated 18 U.S.C. § 1512(b)(3):  (1) that she should not implicate additional persons about cash payments to her beyond those already indicted; (2) that if she denied receiving cash from other individuals the prosecution could not prove otherwise; and (3) that if she implicated other persons there would be ramifications from third parties.  In Count IV, the government alleges that on August 9, 2006, Maze, in violation of 18 U.S.C. § 1503(a), suggested that Manley, in preparation for her proffer of information to the government, (1) could devise a system of signaling to investigative targets, like himself, when she was wearing a body wire in cooperation with law enforcement officials; (2) should feign cooperation by wearing a wire, but that she should signal to the targets of the investigation that she was wired in order to avoid incriminating conversation; and (3) should tell law enforcement officers that one of her co-defendants, Mike Swartz, was going to contest the charges and that she should then feign cooperation against Mike Swartz to obtain credit for cooperation without hurting anyone not yet implicated in the investigation.

On September 6, 2006, Annette Mitchell met with Maze, and like Manley, she wore a wire and recorded their conversation.  Based on statements made by Maze, the government claims in Count V that Maze, with the intent to influence Mitchell's testimony in a federal grand jury proceeding regarding alleged election fraud in

2

Bath County and in violation of 18 U.S.C. § 1512(b)(1), knowingly attempted to corruptly persuade her by telling her, among other things, that (1) the prosecutors did not have any evidence against her other than voter assistance forms; (2) if she told the grand jury that she had no information or knowledge regarding election fraud or the receipt of money from any person during the election, the prosecutors could not prove otherwise; (3) Tammy Manley was not going to implicate her; (4) the money that he had given her was not for buying votes; and (5) she should simply say she was there to help David Hunt, but that she did not know what the plan was with regard to paying voters.

In his motion, Defendant argues that the application of the federal statutes at issue to a practicing attorney who is offering legal advice to a criminal defendant is overbroad and vague in such a context. Claiming that Manley and Mitchell came to him seeking legal advice, Maze argues that the government wired both women during conversations in which he was advising them as their attorney. Maze admits that Manley was being represented by an appointed attorney in federal court, but nonetheless argues that she came to Maze for legal advice as to the federal charges against her and as to a then pending motion to revoke the diversion of her sentence for a three-year-old state charge. Citing to *Commonwealth v. Stenhach*, 514 A.2d 114 (Pa. Super. 1986) for the proposition that "[o]verbroad statutes authorize the punishment of

3

constitutionally protected conduct," Maze essentially argues that §§ 1503(a) and 1512(b)(1) and (3) are so vague as applied to his conduct that no lawyer could reasonably discern where the line exists between criminal behavior and zealous representation of one's client. *Id.* at 124.

Secondly, Maze argues that there is no proof that he acted "corruptly." Maze claims that the government's charges against him should be dismissed because a conviction under either § 1503 or § 1512 requires proof of specific intent to influence corruptly the due administration of justice and the government's transcripts do not provide this proof as to him. Referring to the August 9, 2006, transcript, Maze claims that the transcripts reveal that he told Manley to rely on her lawyer's advice and to tell the truth if she received probation, advice that shows he did not have a corrupt motive. Maze characterizes his conversation with Manley as one in which he was simply giving her sound legal advice, that is, do not offer anything to the government until the government tells you what you will receive in return for your cooperation. He claims that his advice to Manley about making sure that the government would help her before offering information because "there are ramifications when you start talking about people" was another example of him advising her that she should ensure that she had a deal before cooperating.

4

**Standard of Review**

Maze's argument is styled as both a constitutional challenge to the indictment — the charges brought against him are vague and overbroad as applied to his conduct — and a challenge to the sufficiency of the evidence presented in the indictment — his statements do not demonstrate that he acted corruptly. "To be legally sufficient, the indictment must assert facts which in law constitute an offense; and which, if proved, would establish prima facie the defendant's commission of that crime." *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 177 (6th Cir. 1992) (citing *Fleisher v. United States*, 302 U.S. 218 (1937)). Furthermore, "courts evaluating motions to dismiss do not evaluate the evidence upon which the indictment is based." *United States v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001).

**Analysis**

Maze is charged with violating § 1512(b)(1) in Count V and § 1512(b)(3) in Count 3. Section 1512(b) states, in pertinent part:

> (b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to
>    (1) influence, delay, or prevent the testimony of any person in an official proceeding; . . .
>    . . . .
>    (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible

5

>     commission of a Federal offense or a violation
>     of conditions of probation, supervised
>     release, parole, or release pending judicial
>     proceedings
> shall be fined under this title or imprisoned or both.

18 U.S.C. § 1512(b)(1), (3). Count IV charges Maze with violating the "omnibus clause" of 18 U.S.C. § 1503(a), which states in part: "Whoever . . . corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b)."  18 U.S.C. § 1503(a).

**The Indictment Charges Maze With Violating Federal Law by Zealously Representing His Own Interests, Not Those of His Clients**

In his motion, Maze describes our nation's legal system as "the shining example on the hill."  The Court agrees that one of the hallmarks of that system is the attorney's duty to zealously represent his or her client.  This means that an attorney's actions must demonstrate dedication to the client's interests, not the attorney's.  "Our canons of ethics require a lawyer's 'entire devotion to the interest of the client' in the discharge of his duty as an officer of the Court." *In re Investigation before Feb., 1977, Lynchburg Grand Jury*, 563 F.2d 652, 656 (4th Cir. 1977) (quoting *Braxton v. Peyton*, 365 F.2d 563, 565 (4th Cir. 1966) (citing American Bar Association, Canons of Professional Ethics, Canon 15)).  When the attorney's self-interest interferes with his

6

client's, "especially when his client's testimony might implicate the attorney himself, . . . it [is] unrealistic to assume the attorney can vigorously pursue his client's best interests entirely free from the influence of his concern to avoid his own incrimination." *Id.* at 656-57.

Maze shields himself with the attorney-client relationship and asserts that this relationship will be weakened — "the chilling effect of these charges are tremendous" — if the government is allowed to prosecute him under these federal laws. The Seventh Circuit addressed similar arguments in *United States v. Cueto*, 151 F.3d 620, 630 (7th Cir. 1998).

Cueto argued that applying § 1503 to the conduct of defense attorneys would have a chilling effect on representations. The court responded by noting that "[i]t is true that, to a certain extent, a lawyer's conduct influences judicial proceedings, or at least attempts to affect the outcome of the proceedings. However, that influence stems from a lawyer's attempt to advocate his client's interests within the scope of the law." *Id.* at 632. In *United States v. Cintolo*, 818 F.2d 980 (1st Cir. 1987), the court found that the argument that a lawyer should not be convicted for obstruction of justice when there is a possible innocent explanation for his conduct was not sound where the lawyer was working for a third-party's interest, not that of his own client. In a fairly recent article, even as the author criticizes the *Cueto*

7

opinion, he concedes that "[a]cting within the scope of the law necessarily means that the benefit sought is not an 'unlawful' one." Eric J. Tamashasky, *The Lewis Carroll Offense: The Ever-Changing Meaning of "Corruptly" Within the Federal Criminal Law*, 31 J. Legis. 129, 156 (2004).

In Maze's case, the government has presented evidence that he was a suspect in the investigation into the Bath County voting fraud. As evidenced in the transcripts of the conversations, Manley discussed with Maze the fact that the government had asked her, or would ask her, about Maze's involvement in the voting fraud. Knowing that there were ongoing judicial proceedings related to his suspected involvement, Maze spoke with both Manley and Mitchell and claims that he gave disinterested advice, but, as argued by the government, the evidence shows that he was giving advice to avoid further endangerment to himself. Arguably, due to his knowledge that the government suspected him, Maze never should have given legal advice to either Manley or Mitchell. Regardless of that conflict, Maze has not shown that simply alleging that he was acting as their attorney somehow shields him from the federal laws that prohibit obstruction of justice in the face of the government's evidence that he acted with a corrupt purpose in "advising" his clients.

**The Indictment Refers to Evidence That, if Proven, Demonstrates Maze's Corrupt Motive**

As to Maze's contention that Counts III, VI, and V of the

indictment are based on unsupported evidence that he acted with a corrupt motive, "the general rule is that a defendant may not successfully attack a facially valid indictment on the ground that during the grand jury investigation the government presented inadequate or incompetent evidence." *United States v. Mejia*, 578 F. Supp. 1541, 1551 (E.D.N.Y. 1984) (citing *Costello v. United States*, 350 U.S. 359, 363-64 (1956)); *see United States v. Markey*, 693 F.2d 594, 596 (6th Cir. 1982) ("The validity of an indictment is not affected by the type of evidence presented to the grand jury, even though that evidence may be incompetent, inadequate or hearsay."); *see also United States v. Toatley*, 2 Fed. Appx. 438, 442 (6th Cir. 2001) ("Because indictments are presumed valid, and the law is designed to limit a trial court's ability to dismiss indictments, the district court need not further justify its decision not to dismiss certain counts in an indictment when those counts clearly are supported by the evidence.").

It is true that not every moral or ethical transgression constitutes a crime. *See generally United States v. O'Hagan*, 92 F.3d 612 (8th Cir. 1996) (overturning an attorney's conviction because his liability for securities fraud may not be premised on his breach of fiduciary duty to his law firm and his client). In *Cueto*, the court noted that "[t]here is little case authority directly on point to consider whether an attorney acting in his professional capacity could be criminally liable under the omnibus

9

clause of § 1503 for traditional litigation-related conduct that results in an obstruction of justice." *Cueto*, 151 F.3d at 631. As quoted by Maze in his motion, Professor Bruce A. Green posits that "the criminal law may serve indirectly to restrain conduct that might otherwise be considered professionally praiseworthy." Bruce A. Green, *The Criminal Regulation of Lawyers*, 67 Fordham L. Rev. 327, 353 (1998).

But as explained by the Seventh Circuit in *Cueto*, "[o]therwise lawful conduct, even acts undertaken by an attorney in the course of representing a client, can transgress § 1503 if employed with the corrupt intent to accomplish that which the statute forbids." *Cueto*, 151 F.3d at 631 (citing *Cintolo*, 818 F.2d at 992). As alleged in the indictment, when Maze advised Manley in a case in which he knew he was suspected as her co-conspirator, he acted with the corrupt intent to avoid criminal charges being brought against him and his advice to Manley became transgressions. The government charges that it was Maze's "corrupt endeavor" to protect himself from being implicated as a co-conspirator in the vote fraud scheme which motivated his conduct and that this motive "separates his conduct from that which is legal." *Id.*

The indictment alleges that Maze acted with a corrupt motive when he made several statements during his conversations with Manley and Mitchell, including (1) inquiring as to each woman if she was wearing a wire, (2) coaching Manley on how to alert him if

10

she was wearing a wire, (3) advising Manley on implicating those currently under indictment while remaining silent on other participants, (4) advising Manley on how to feign cooperation with the government to obtain credit for her cooperation, and (5) telling both women that if they denied receiving money from anyone related to the voting fraud scheme, the prosecution could not prove otherwise, and that therefore, his conduct constitutes violations of federal law.  Maze's argument that there is no proof that he acted corruptly is simply without merit.

## Conclusion

A gleaming trait of the attorney-client relationship is the attorney's pledge to work for the interests of his or her client. Allowing Maze to escape prosecution by dismissing several counts of his indictment because he engaged in a conflict-laden attorney-client relationship with his alleged co-suspects would tarnish this ideal.

Accordingly, **IT IS ORDERED** that Defendant's motion to dismiss [Record No. 26] be, and the same hereby is, **DENIED.**

This the 30th day of January, 2007.



**Signed By:**

*Joseph M. Hood*

**United States District Judge**